UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY MARTIN,                                    Case No. 13-11189

              Plaintiff,                      Robert H. Cleland
v.                                                  United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                    Michael Hluchaniuk
                                                    United States Magistrate Judge
              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 11)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On March 18, 2013, plaintiff Kimberly Martin filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Robert H. Cleland referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for disability and disability insurance benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 9, 11).

### B.    Administrative Proceedings

Plaintiff filed the instant claims for disability and disability insurance

benefits on July 16, 2009, alleging disability beginning January 19, 2009. (Dkt. 7-5, Pg ID 138-39). Plaintiff's claims were initially disapproved by the Commissioner on November 3, 2009. (Dkt. 7-3, Pg ID 83). Plaintiff requested a hearing and on August 26, 2011, plaintiff appeared with her attorney before Administrative Law Judge ("ALJ") JoErin O'Leary, who considered the case de novo. (Dkt. 7-2, Pg ID 50-79). In a decision dated October 20, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 34-45). Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on January 18, 2013, denied plaintiff's request for review. (Dkt. 7-2, Pg ID 29-31); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1962 and was 49 years old at the time of the administrative hearing, and 46 years of age on the alleged disability onset date. (Dkt. 7-2, Pg ID 43). Plaintiff had past relevant work as an assembler, motor

vehicle.  (Dkt. 7-2, Pg ID 43).  The ALJ applied the five-step disability analysis to

plaintiff's claim and found at step one that plaintiff has not engaged in substantial

gainful activity since the alleged onset date.  (Dkt. 7-2, Pg ID 39).  At step two, the

ALJ found that plaintiff's bilateral shoulder injury was "severe" within the

meaning of the second sequential step, but that plaintiff's thyroid disorder was not

severe.  (Dkt. 7-2, Pg ID 39).  At step three, the ALJ found no evidence that

plaintiff's impairment or combination of impairments met or equaled one of the

listings in the regulations.  (Dkt. 7-2, Pg ID 39-40).  The ALJ determined that

plaintiff had the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b)
> with the following: she can lift and/or carry up to 10
> pounds occasionally and no more than 8 pounds
> frequently; she can sit up to six hours in an 8-hour
> workday; and she can stand and walk up to 6 hours in an
> 8-hour workday.  She is limited in her ability to
> push/pull due to her shoulder injury.  She is unable to
> perform any overhead reaching bilaterally.  She would
> have to avoid concentrated exposure to extremes of cold
> or wetness.

(Dkt. 7-2, Pg ID 40-43).

At step four, the ALJ found that plaintiff was unable to perform any of her

past relevant work, which was classified as unskilled and medium, but light as

performed.  (Dkt. 7-2, Pg ID 43).  At step five, the ALJ denied plaintiff benefits

because plaintiff could perform a significant number of jobs available in the

national economy.  (Dkt. 7-2, Pg ID 44).  Based on the foregoing, the ALJ

concluded that plaintiff had not been under a disability from January 19, 2009

through the date of the decision.  (Dkt. 7-2, Pg ID 44).

     **B.    Plaintiff's Claims of Error**

     Plaintiff argues that the ALJ erred in assessing plaintiff's credibility and

failed to properly evaluate the medical records and thus formed an inaccurate

hypothetical question that did not accurately portray plaintiff's impairments.

According to plaintiff, because each element of the hypothetical does not

accurately describe plaintiff in all significant, relevant respects, the vocational

expert's testimony at the hearing should not constitute substantial evidence

supporting the ALJ's decision.

     Plaintiff contends that the ALJ did not properly evaluate all of her

impairments in the hypothetical question. The ALJ found that plaintiff suffered

from the severe impairment of "bilateral shoulder injury."  (Tr. 11).  The ALJ also

concluded that although he found that the

> …claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms;
> however, the claimant's statement concerning the
> intensity, persistence and limiting effects of these
> symptoms are not credible to the extent they are
> inconsistent with the above residual functional capacity
> assessment.

(Tr. 13).  Plaintiff argues that this conclusion by the judge was clearly incorrect

because plaintiff's statements concerning the intensity, persistence and limiting effects were supported by the medical records.  Plaintiff first contends that she stated: she has not "been able to have the therapy or anything anymore, and my shoulder is still giving me a lot of pain" (Tr. 31); she has difficulty "washing my back and my neck when I take a shower or bath; I have to have my husband help me. I can't raise my hand to do my hair. . . " (Tr. 32); she has "trouble sleeping at night" and that she has "sharp, shooting pains" (Tr. 32); she has "swelling in my feet and my knuckle, my joints. My ankles and my feet, they give me pain" (Tr. 34); she also gets "really fatigued" and that "I just have no energy at all" (Tr. 37); and that, on bad days "when I'm really fatigued and tired it's – I can't hardly make it up the stairs without help."  (Tr. 39).  Plaintiff further contends that in regard to lifting, she testified that she can only lift "a plate of food, but not a gallon of milk."  (Tr. 40).   She also testified that: the pain that she experiences "radiates down my arm to my hands, my fingers, my tips here" (Tr. 40); and her left shoulder is also "starting to give me problems" with pain, and she stated that she has "limited use with that, as well."  (Tr. 45).

Plaintiff argues that her testimony is backed up by medical records and that the ALJ erred in finding that her testimony was not credible. Plaintiff asserts that her July 27, 2009 medical record indicates that "she has pain in her right upper extremity" as well as a history of "right shoulder problem."  (Tr. 298).  That record

5

further indicates that the "pain is mainly on the arm, goes into the radial side of the forearm down into the thumb area," and that "she gets some tingling into the second, third, and fourth fingertip areas and that seems to be fairly persistent for her." (Tr. 298). Plaintiff asserts that the doctor in that record indicated that plaintiff has "decompression and had a secondary adhesive capsulitis and she has had some continued symptoms of impingement, but now she is getting some pain into the right forearm and hand area, and has had some tingling of the fingers for the past two to three months." (Tr. 298). Plaintiff asserts that, in addition, her treating physician, Dr. Blair, in a document dated 6/25/2009, stated "NEVER" in response to a question about giving "the approximate date on which gainful employment of any kind may be expected to be resumed." (Tr. 429). And, a January 21, 2010 medical record indicates that plaintiff's "feet and ankles are stiff daily" and that she has arthritis in her ankles. (Tr. 423). The record also documents shoulder pain bilaterally. (Tr. 427). A record dated 7/7/2010 also indicates polyarthralgias and that the "symptoms are gradually worsening." (Tr. 482). That record also states that plaintiff has "associated stiffness and swelling" that involves the "balls of the feet, R Knee, and L2,3 PIP and MCP." (Tr. 482).

Thus, plaintiff concludes, her testimony regarding her severe medical impairments is backed up by medical documentation, and the ALJ's finding that her testimony was not credible is clearly in error.

Plaintiff asserts that the vocational expert testified, in response to the hypothetical's posed by the ALJ, that claimant could perform work as a machine operator/tender, inspector, and hand packager. (Tr. 16). Plaintiff argues that the hypothetical question that was posed and followed by the ALJ did not represent plaintiff in every relevant aspect as required. Rather, plaintiff contends that the ALJ should have followed the other hypothetical question which stated: "if the individual, due to a combination of pain and fatigue, would have to lie down on an unpredictable basis for two hours of a regular eight-hour workday," would that be work preclusive. (Tr. 50). The plaintiff argues that the ALJ then added the limitation that the claimant would be absent "three to four times a month," and the vocational expert also stated that this limitation would be work preclusive. (Tr. 50). Plaintiff argues that the hypothetical that the ALJ followed did not represent plaintiff in every aspect and thus the ALJ's reliance on the vocational expert's testimony to the first hypothetical cannot constitute substantial evidence. Plaintiff contends that it is clear from the medical evidence of record and her testimony that her ability to engage in substantial gainful activity is severely limited as a result of her physical and mental conditions, and, as such, plaintiff would only be capable

of engaging in substantial gainful activity by enduring great pain and should,

therefore, be found disabled in accordance with the Social Security Rules and

Regulations.  Plaintiff concludes that the reasons given by the ALJ in discounting

plaintiff's testimony are clearly insufficient and that the great weight of the

evidence supports plaintiff's testimony regarding her conditions and problems,

and that she should be found disabled in accordance with her testimony.  Plaintiff

therefore requests this Court to reverse the decision denying benefits and remand

this case with an award of benefits, or, in the alternative, remand this case for

further proceedings consistent with the above arguments.

### C.     The Commissioner's Motion for Summary Judgment

The Commissioner contends that the ALJ's RFC is supported by substantial

evidence.  According to the Commissioner, the ALJ reasonably determined that

plaintiff's shoulder injury was a severe impairment because it caused more than a

minimal limitation on plaintiff's ability to perform basic work activities.  After

determining that plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of a listing, the ALJ

assessed plaintiff's residual functional capacity and found that plaintiff could

perform a restricted range of light work.  (Tr. 12).  Because of plaintiff's shoulder

injury, the ALJ restricted plaintiff's ability to push/pull, prohibited her from

reaching overhead, and required that she avoid concentrated exposure to extremes

8

of cold or wetness (Tr. 12).

The Commissioner argues that substantial evidence supports the ALJ's finding.  In particular, the ALJ gave great weight to the July 2009 opinion of plaintiff's treating physician, Dr. Dale Mead, M.D., who concluded that plaintiff could work with a 10-pound lifting restriction as long as she kept her arm "below the horizon."  (Tr. 15, citing Tr. 299).  According to the Commissioner, the ALJ gave this opinion great weight because it was based on Dr. Mead's observations and findings.  (Tr. 15).  Dr. Mead noted that plaintiff retained full strength in her extremities and shoulders, but had some symptoms of impingement in her right shoulder, and diagnosed her with adhesive capsulitis of the right shoulder.  (Tr. 298-99).  The Commissioner asserts that Dr. Mead's opinion was consistent with the opinion of William Jackson, M.D., an internal medicine doctor who reviewed plaintiff's record on behalf of the State agency in November 2009.  The Commissioner notes that State agency doctors are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  *See* 20 C.F.R. § 404.1527(e)(2)(I).  Dr. Jackson concluded that plaintiff could lift/carry ten pounds occasionally and eight pounds frequently; stand/walk for about six hours in an eight-hour day; and sit for about six hours in an eight-hour day.  (Tr. 351).  Dr. Jackson also opined that plaintiff could not use her right arm overhead and suggested that she avoid concentrated exposure to

extreme cold and wetness.  (Tr. 353-54).  The Commissioner argues that the

opinions of Drs. Mead and Jackson are substantial evidence in support of the

ALJ's residual functional capacity assessment.

The Commissioner further argues that the ALJ's decision demonstrates that

she properly evaluated plaintiff's credibility, and to the extent she discounted

plaintiff's statements, the ALJ provided specific reasons for doing so.  The

Commissioner asserts that an ALJ's finding concerning the credibility of an

applicant is entitled to great weight and deference.  *Walters v. Comm'r of Soc.*

*Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  The Sixth Circuit has stated that courts

are "limited to evaluating whether or not the ALJ's explanations for partially

discrediting [claimant] are reasonable and supported by substantial evidence in the

record."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also*

*Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) ("we

will not normally substitute our impressions on the veracity of a witness for those

of the trier of fact").  The Commissioner asserts, notably, the ALJ did not

summarily reject plaintiff's complaints, but instead accounted for plaintiff's

credible limitations in the residual functional capacity assessment.  The

Commissioner continues that while plaintiff may disagree with the ALJ's

credibility assessment, she has failed to demonstrate a basis for overturning the

finding, especially in light of the great weight and deference that an ALJ's

credibility finding is entitled to on review.  The Commissioner concludes that because the ALJ's credibility finding is supported by substantial evidence, it should not be disturbed.

The Commissioner notes that plaintiff argues that the ALJ's residual functional capacity assessment did not account for her subjective complaints of pain, but "statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged. . . ."  20 C.F.R. § 404.1529(a).  According to the Commissioner, in evaluating a claimant's statements concerning pain, an ALJ may also consider other factors, including, the claimant's daily activities, precipitating and aggravating factors, treatment history, and medication.  20 C.F.R. § 404.1529(c)(3).  The Commissioner argues that the ALJ's decision demonstrates that she considered all of these factors in evaluating plaintiff's complaints, and reasonably found that plaintiff's "alleged symptoms and limitations have not been corroborated to the extent alleged by the claimant in the evidence of record. . . . "  (Tr. 14).

The Commissioner notes that plaintiff asserts that the ALJ did not account for her testimony that she had difficulty showering and bathing because she could not lift her right arm overhead as a result of her shoulder pain.  (Dkt. 9, p. 10,

11

citing Tr. 31-32). The Commissioner counters, however, that the ALJ's residual

functional capacity assessment accommodated plaintiff's difficulty raising her arm

by prohibiting her from reaching overhead. (Tr. 12). To the extent that plaintiff

complained of "shooting pain" (Dkt. 9, p. 10), the ALJ noted that plaintiff

managed her pain with over-the-counter medication and "had not taken any

narcotic based pain relieving medication in spite of the allegations of quite

limiting pain." (Tr. 14, citing Tr. 32). *See* 20 C.F.R. § 404.1529(c)(3)(iv) (an ALJ

may consider the type and effectiveness a claimant uses for her pain). The

Commissioner further notes that plaintiff also argues that she had pain in her feet,

ankles, and knuckles, which would make it difficult to lift and carry. (Dkt. 9, p.

10). However, the ALJ noted that plaintiff went to Aaron Eggebeen, M.D., a

rheumatologist, in July 2010 complaining of similar symptoms (Tr. 13), and Dr.

Eggebeen diagnosed plaintiff with "unspecified inflammatory polyarthropathy"

and prescribed medication. (Tr. 482-84). However, in April 2011, plaintiff

reported that she was no longer taking her medication and that she had no interest

in returning to the rheumatology clinic unless there were no other options. (Tr.

498). The Commissioner noted that at the hearing, plaintiff testified that her

treating physician, Dr. David Blair, suspected that she had rheumatoid arthritis,

but plaintiff conceded that she had not been treated for this condition. (Tr. 34-36).

According to the Commissioner, the ALJ accounted for plaintiff's pain by limiting

12

her to carrying ten pounds occasionally and eight pounds frequently. (Tr. 12). The Commissioner argues that the ALJ's restrictions are consistent with and supported by the opinions of Drs. Mead and Jackson, and plaintiff has failed to show that she had greater limitations than the ALJ found.

The Commissioner notes that plaintiff also complains that she had left shoulder pain. (Pl.'s Br. 10). However, the ALJ noted that "there was no evidence for any impairment in the left shoulder." (Tr. 13). 20 C.F.R. § 404.1529(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). The Commissioner asserts that plaintiff cites to a single treatment note that states that she had bilateral shoulder pain (Dkt. 9, p. 11, citing Tr. 11), but argues that this treatment note does not provide any underlying objective evidence to support such a diagnosis. The Commissioner notes, significantly, that plaintiff has not shown that she had any impairment in her left shoulder that lasted or was expected to last twelve consecutive months. *See* 20 C.F.R. § 404.1509 (an impairment must have lasted or be expected to last twelve consecutive months to be severe). The Commissioner asserts that plaintiff broadly cited to other medical records in support of her argument that she had problems with her right shoulder, ankles, and feet (Dkt. 9, p. 11), but failed to explain why

13

these documents would undermine the ALJ's residual functional capacity assessment or otherwise show that she was disabled. The Commissioner argues that plaintiff waives any argument not clearly asserted or developed. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (citation and internal quotation omitted).

The Commissioner further argues that plaintiff broadly asserts that the ALJ should have properly weighed the treating physician's opinion (Dkt. 9, pp. 12-14), but she does not explain whose opinion she believes the ALJ improperly weighed. Indeed, plaintiff simply recites black letter law but does not apply it to any of the underlying facts in this case. The Commissioner argues that plaintiff waives any argument not clearly asserted or developed. *See McPherson*, 125 F.3d at 995-96. The Commissioner continues that, in any event, the ALJ properly weighed all the opinions of record and provided good reasons for her determinations. The Commissioner asserts initially that the ALJ gave great weight to the July 2009 opinion of Dr. Mead, who had treated plaintiff since January 2003 and performed surgery on plaintiff's shoulder in September 2005. (Tr. 227-29). The Commissioner argues, as it did above, that the ALJ gave great weight to this

14

opinion because it was supported by Dr. Mead's observations and findings. (Tr. 15). The Commissioner notes that the ALJ also considered the June 2009 opinion of Dr. Blair, who opined that plaintiff had been disabled since January 2009. (Tr. 14, citing Tr. 415). The Commissioner asserts that the regulations, at 20 C.F.R. § 404.1527(c)(2), instruct that an opinion that a claimant is "permanently disabled" is not a "medical opinion," but rather is a legal opinion on an issue reserved to the Commissioner. "[T]reating source opinions on issues reserved to the Commissioner are never entitled to *controlling weight or special significance*." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, *2 (emphasis added); *see also* 20 C.F.R. § 404.1527(d)(3). The Commissioner continues that indeed, giving deference to a treating source's opinion that a claimant cannot work "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p, 1996 WL 374183, *2. Thus, the Commissioner argues that the ALJ was not obligated to adopt Dr. Mead's conclusory legal opinion. Moreover, the Commissioner continues, ALJ pointed out that Dr. Blair did not provide any functional limitations in his assessment or provide any explanation as to why he believed plaintiff was disabled. (Tr. 14-15). 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an

15

opinion, the more weight we will give that opinion."). The Commissioner contends that plaintiff has not shown that Dr. Blair's opinion was entitled to greater weight.

The Commissioner notes that the ALJ also declined to give weight to the opinion of Thomas Collins, M.D., who completed a medical form indicating that plaintiff was disabled from April 2009 to July 2009. (Tr. 14, citing 417). As discussed above, an opinion that a claimant is disabled is not entitled to any "controlling weight or special significance." SSR 96-5p, 1996 WL 374183, *2 (emphasis added); *see also* 20 C.F.R. § 404.1527(d)(3). The Commissioner asserts, in addition, the ALJ explained that she was giving greater weight to Dr. Mead, as his opinion was "more consistent" with plaintiff's treatment history. (Tr. 14). The Commissioner argues that the ALJ reasonably evaluated the opinions provided by plaintiff's treating sources and provided good reasons for the weight she gave to these sources. The Commissioner notes that "[g]iven the number of physicians and the variation in their opinions, almost any decision that the ALJ could have rendered would have required him to discredit the opinion of at least one physician." *Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 472, 476 (6th Cir. 2008). Accordingly, the Commissioner concludes that this Court should find that the ALJ did not commit reversible error in how he weighed the medical opinion evidence. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)

16

("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

The Commissioner further argues that plaintiff's assertion that the ALJ's hypothetical question to the vocational expert did not accurately portray her limitations is largely repetitive of her earlier assertion that the ALJ's residual functional capacity finding did not account for her complaints. However, the Commissioner argues, as it did above, that substantial evidence supports the ALJ's findings concerning plaintiff's limitations. Although plaintiff suggests that the hypothetical question should have included a limitation that allowed her to "lie down on an unpredictable basis for two hours of a regular eight-hour workday," the medical record does not support such a limitation. The Commissioner notes that indeed, no medical source ever imposed such a restriction. The Commissioner thus concludes that the ALJ did not err by omitting such a limitation from the hypothetical question. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("each element of the hypothetical question must accurately describe the claimant."). The Commissioner argues that because the ALJ's hypothetical question accurately portrayed plaintiff's credible limitations, the ALJ reasonably relied on the vocational expert's testimony that an individual who shared plaintiff's vocational background and residual functional capacity could

perform thousands of jobs in Michigan, and was thus not disabled.  (Tr. 16, 47-49).  The Commissioner concludes that substantial evidence therefore supports the ALJ's decision and this Court should affirm the Commissioner's decision.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

18

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact

are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that

20

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

21

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of

> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

**C.      Analysis and Conclusions**

  **1.      The ALJ's Credibility Assessment is Supported by
            Substantial Weight**

Plaintiff complains that each element of the hypothetical question posed to

the vocational expert does not accurately describe plaintiff in all significant,

relevant respects and that the vocational expert's testimony at the hearing

therefore does not constitute substantial evidence supporting the ALJ's

determination that plaintiff is not disabled.  Although plaintiff phrases this as a

Step Five finding, the undersigned concludes that plaintiff is attempting to refute

the RFC finding via a purported Step Five error.  *See Kirchner v. Colvin*, 2013 WL

5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a

veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario

where the ALJ's hypothetical failed to match up to the RFC he ultimately

imposed.").

Plaintiff points to her severe impairment of bilateral shoulder pain, and

argues that the ALJ erred in finding that plaintiff's testimony as to the intensity

and persistence of her symptoms associated with this impairment was not entirely

credible.  As the relevant Social Security regulations make clear, however, a

claimant's "statements about [her] pain or other symptoms will not alone establish

24

that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929. Instead, the Sixth

Circuit has repeatedly held that "subjective complaints may support a finding of

disability only where objective medical evidence confirms the severity of the

alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794,

801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir.

1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology,

the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each

other.").

   "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass

upon the credibility of the witnesses and weigh and evaluate their testimony."

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers*

*v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has

held, determinations of credibility related to subjective complaints of pain rest

with the ALJ because "the ALJ's opportunity to observe the demeanor of the

claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of*

*Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted).

Thus, an ALJ's credibility determination will not be disturbed "absent compelling

reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not

required to accept the testimony of a claimant if it conflicts with medical reports,

25

the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

The undersigned suggests that the ALJ's finding that the objective record evidence does not support plaintiff's claims of disabling limitations is supported by substantial evidence. Here, the ALJ acknowledged that plaintiff claimed she is disabled due to shoulder pain, and that this condition limits her ability to lift, reach, use her hands, and persist on task. (Tr. 13, citing Tr. 159-65, 166-77). The ALJ then concluded that although plaintiff's medically determinable impairments

26

could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with plaintiff's RFC. (Tr. 13). The ALJ reviewed and summarized the record medical evidence, noting that plaintiff claimed she injured her shoulder at work, and that she testified she had shoulder pain since 1999. (Tr. 13). Plaintiff underwent arthroscopic decompression of her right shoulder in September 2005, and subsequently attended physical therapy. (Tr. 13, citing Tr. 210-31). Dr. Dale Mead, plaintiff's treating physician, examined plaintiff in July 2009, and noted that she had slightly decreased range of motion in her left shoulder compared to the right shoulder and very good glenohumeral motion. (Tr. 13, citing Tr. 298-301). Plaintiff had 5/5 muscle strength bilaterally, including shoulder abductors and adductors and internal and external rotators, had a negative drop test on her shoulders, and alleged tenderness on palpation of the greater and lesser tuberosities and rotator cuff on the right shoulder. (*Id.*). X-rays of the right shoulder showed a past acromioplasty and a very thin-appearing acromion, but were otherwise unremarkable, and Dr. Mead assessed plaintiff with some symptoms of impingement of the right shoulder, past decompression of the right shoulder, and postoperative adhesive capsulitis of the right shoulder. (*Id.*).

The ALJ also noted that plaintiff testified to swelling in her feet, ankles and

27

hands and that Dr. Aaron Eggebeen, M.D., examined plaintiff in July 2010 and
diagnosed her with unspecified polyarthropathy and prescribed a nonsteroidal
anti-inflammatory drug. (Tr. 14, citing Tr 482-84). However, April 2011
treatment notes indicated that plaintiff reported non-compliance with her
medication and unwillingness to return to the rheumatology clinic unless there
were other options. (Tr. 14, citing Tr. 498). And, at the hearing, plaintiff
confirmed that she is not taking any medication, other than her thyroid medication,
and that she is managing her pain with over-the-counter medication. (Tr. 36).

The ALJ then addressed plaintiff's credibility and found:

> In assessing the claimant's credibility, I noted that the
> alleged symptoms and limitations have not been
> corroborated to the extent alleged by the claimant in the
> evidence of record and does not justify a finding of
> disabled. The claimant testified to very limited daily
> living activities. However, the record supports the
> finding that the claimant is able to perform the majority
> of her self-care tasks and other activities. The claimant
> prepares simple meals, shops, drives, socializes with
> family and friends, occasionally goes to church and pays
> bills (Ex. 6E). Nevertheless, taking all of these factors
> into consideration, I find that the claimant has limitations
> and have made adjustments for these limitations in the
> residual functional capacity adopted.
>
> Another factor influencing the conclusions reached in
> this decision is the claimant's medication. The claimant
> testified that her only prescribed medication was for her
> thyroid and that she manages her shoulder pain with over
> the counter medications. The claimant has not taken any
> narcotic based pain relieving medications in spite of the

28

allegations of quite limiting pain.

(Tr. 14).  The ALJ did not summarily reject plaintiff's complaints, but instead accounted for plaintiff's credible limitations in the residual functional capacity assessment.  Plaintiff complained of difficulty washing her back and hair because she cannot raise her hand overhead, but the ALJ accommodated that complaint by limiting her to no overhead reaching bilaterally.  (Tr. 12).  Plaintiff also complains of left shoulder pain.  Although the ALJ noted that "there was no evidence for any impairment in the left shoulder," his RFC nevertheless limits plaintiff's ability to push/pull and perform any overhead reaching bilaterally, and not just for her right shoulder.  (Tr. 12).  The ALJ further properly found that plaintiff's use of only mild, over-the-counter medications undercuts her complaints of disabling pain. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("Mr. Blacha's use of only mild medications (aspirin) undercuts complaints of disabling pain . . . ."); *see also* 20 C.F.R. § 404.1529(c)(3)(iv) (permitting ALJ to consider the type of medication that a claimant takes for her alleged symptoms).

In contrast to plaintiff's subjective complaints of disabling pain, the ALJ also properly noted the daily activities in which plaintiff engages, including preparing simple meals, shopping, driving, socializing with family and friends, occasionally going to church, and paying bills.  (Tr. 14, citing Tr. 170-77).

29

Plaintiff does not contest the ALJ's findings regarding her daily activities, and the undersigned notes that an ALJ can consider daily activities in assessing credibility. 20 C.F.R. § 404.1529(c)(3)(I); *see also Warner*, 375 F.3d at 392 (recognizing that in nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability); *Heston*, 245 F.3d at 536 (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

Therefore, the ALJ credited the treating physicians' assessments and diagnoses, evaluated the extent to which the severity of plaintiff's pain could reasonably be accepted as consistent with the medical evidence, and found plaintiff's testimony about the extent of pain not fully credible. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. The undersigned concludes that there is substantial evidence in the record to support the ALJ's credibility findings and conclusion that plaintiff's impairments do not preclude her from performing the identified jobs.

30

2.    **The ALJ's RFC Determination is Supported by Substantial Weight**

Plaintiff argues that the ALJ erred in determining plaintiff's RFC because that RFC did not include plaintiff's testimony as to the need to lie down during the day due to fatigue.  However, plaintiff's claim that the ALJ's RFC determination is in error because that determination does not include plaintiff's subjective testimony is unavailing, as "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate."  *Jones*, 336 F.3d at 476.  The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms."

*Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007); 20

C.F.R. § 404.1545(e).  Thus, while the medical evidence indicates that plaintiff

does have a severe impairment, as noted by the ALJ, it does not specifically

support plaintiff's testimony regarding the extent of her limitations.

In determining plaintiff's RFC, the ALJ thoroughly reviewed the record

evidence, including the opinion evidence.  (Tr. 13-15).  The ALJ noted that Dr.

Thomas Collins restricted plaintiff's use of her right upper extremity from June to

September 2005, but gave this opinion little weight as it was prior to plaintiff's

surgery and physical therapy.  (Tr. 14, citing Tr 232-53).  Dr. Mead opined that

plaintiff was restricted to lifting five pounds and had limited abduction of her right

upper extremity in February 2006, and the ALJ gave little weight to this opinion as

Dr. Mead subsequently provided more current work restrictions in July 2009.  (Tr.

14, citing Tr. 201-31).  Dr. Collins completed  a medical form in June 2009

indicating that plaintiff was disabled from working from April 21, 2009 to July 21,

2009, and noting that the plant plaintiff worked at was closing on June 30, 2009

and that there would never be work for plaintiff there.  (Tr. 14, citing Tr. 409-21).

The ALJ accorded little weight to this opinion because the opinion of another

treating provider with a more consistent treatment history with plaintiff (Dr.

Mead), had been given greater weight.  (*Id.*).  Dr. David Blair, M.D., completed a

medical form in June 2009 and opined that plaintiff was unable to engage in any

32

occupation or employment and has been continuously disabled since January 21, 2009, and the ALJ accorded little weight to this opinion because statements such as a claimant is "disabled" are issues reserved for the Commissioner, and further noting that Dr. Blair did not provide any functional limitations. (Tr. 14, citing Tr. 409-21). Finally, Dr. Mead indicated in July 2009 treatment notes that plaintiff was limited to a 10-pound lifting restriction and no overhead lifting, and the ALJ accorded this opinion great weight as it is based upon objective observations and findings, and is consistent with the medical evidence of record.

The ALJ further considered the physical residual functional capacity assessment completed by Dr. William Jackson, M.D., for the Disability Determination Services. (Tr. 15, citing 350-57). Dr. Jackson reviewed the record evidence and opined that plaintiff could occasionally lift ten pounds and frequently lift eight pounds, she could stand/walk for six of eight hours, sit for six of eight hours, could perform no overhead pushing and/or pulling, should avoid overhead work with the right arm, and avoid concentrated exposure to extreme cold and wetness. (*Id.*). The ALJ gave significant weight to Dr. Jackson's opinion as he reviewed the medical evidence of record and is familiar with the disability program and its requirements. (*Id.*).

No medical source had ever imposed a restriction that plaintiff needs to lie down for two hours on a regular basis. And, as discussed above, the ALJ's

credibility determination is supported by substantial evidence. The undersigned suggests that Dr. Mead's and Dr. Jackson's opinions provide substantial evidence in support of the ALJ's residual functional capacity, and plaintiff's claim of error should be denied.

### 3.   The ALJ Properly Weighed the Record Opinion Evidence

Plaintiff's motion contains a general discussion of the "treating physician rule," but she does not identify any treating physician's opinion that the ALJ purportedly failed to properly address, other than noting that Dr. Blair stated "never" in response to a request to give "the approximate date on which gainful employment of any kind may be expected to be resumed." (Dkt. 9, pp. 12-15, citing Tr. 429). Rather, plaintiff simply recites black letter law without applying any facts in this case. (*Id.*). Plaintiff has therefore failed to adequately develop this argument, and it should be deemed waived. *See McPherson v. Kelsey*, 125 F.3d at 989, 995, 96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

In any event, as discussed above, the ALJ thoroughly reviewed and analyzed and properly weighed the opinion evidence in this case and provided good reasons for the weight she gave to those sources. (Tr. 14-15). The ALJ gave

great weight to the July 2009 opinion by Dr. Mead, who had treated plaintiff since January 2003 and performed surgery on plaintiff's shoulder in September 2005, explaining that this opinion was based on objective observations and findings, and is consistent with the medical evidence of record.  (Tr. 15; Tr. 227-79).  The undersigned further notes that this is the most recent treating physician opinion. The ALJ also expressly considered the prior opinions by plaintiff's physicians, from 2005 through June 2009, and sufficiently explained her reasons for giving those opinions little weight.  (Tr. 14-15).  The ALJ properly gave little weight to opinions that plaintiff was disabled or unable to work.  The regulations specifically exclude from consideration opinions on certain issues, such as conclusory statements that a claimant is disabled or unable to work.  *See* 20 C.F.R. § 404.1527(d); *see also Dunlap v. Comm'r of Soc. Sec.*, 509 Fed. Appx. 472, 476 (6th Cir. 2012) (holding doctor's conclusion in single-sentence note that "[i]n my medical opinion, [claimant] has severe low back pain and due to his pain is unable to work" did not constitute medical opinion and was properly reserved to the Commissioner).  The ALJ thoroughly discussed her reasons for accepting certain opinions and rejecting others, and the undersigned cannot say that she committed any error in doing so.  *See Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 472, 476 (6th Cir. 2008) ("Given the number of physicians that examined Gaskin and the variation of their opinions, almost any decision that the ALJ could have

35

rendered would have required him to discredit the opinion of at least one physician.") (citing *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) (stating that an ALJ confronted with opposing medical opinions did not err in rejecting some of the opinions and accepting others where there was ample support in the record for the opinions he accepted)).

Because the ALJ reached her decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 14, 2014                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 14, 2014 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, Niranjan Emani, William L. Woodard and Commissioner of Social Security.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov